UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.P. MORGAN SECURITIES, LLC, et. al.,

        Plaintiffs,

  vs.                                      Case No.  15-10761

ROBERT PORCHER, III,             HON.  GEORGE CARAM STEEH
INDIVIDUALLY AND AS TRUSTEE
OF THE ROBERT PORCHER, III
REVOCABLE LIVING TRUST,

        Defendant.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. 16)

This matter is before the court on Plaintiffs' motion for summary judgment. Plaintiffs ask the court to permanently enjoin Defendant from pursuing a Financial Industry Regulatory Authority (FINRA) arbitration. Plaintiffs also seek confirmation of a previous FINRA arbitration award from 2012. For the reasons stated in the court's opinion, Plaintiffs' motion for summary judgment is DENIED.

### Statement of Facts

Defendant Robert Porcher III (Defendant) entrusted his retirement savings to Plaintiff Ryan Lepper (Lepper) to invest. During the time at issue, Lepper was employed both as an investment adviser at JPMorgan Chase Bank, N.A. (Chase Bank) and as a securities broker registered with Plaintiff JPMorgan Securities, Inc. (JPMS). JPMS is a FINRA member; Chase Bank is not. FINRA is a non-governmental regulatory organization for securities brokers and dealers. It was created when the National

-1-

Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE) combined in 2007. FINRA established an arbitration forum to resolve disputes with customers, and its members have agreed to rules governing access to that forum.

Defendant opened two accounts at Chase Bank through Lepper. The first was a Chase Private Client investment agency account, into which securities were transferred. Defendant also opened a Chase Bank account for a $2.5 million line of credit, secured by the Chase Private Client account. In addition to these accounts, Defendant signed an agreement with Chase Bank to arbitrate with the American Arbitration Association (AAA). Defendant did not open an account with or sign an arbitration agreement with JPMS.

Defendant identifies several facts that reflect a relationship with JPMS regardless of the lack of formal agreement. Several of Defendant's monthly statements from 2010 and 2011, when the account balance was $0.00, indicate that the securities in the accounts were affiliated with JPMS. Lepper also signed a Supervision Agreement indicating that, when selling securities, he would be directed by JPMS. In addition, there were five individuals who serviced Defendant's accounts who were employed exclusively by JPMS, not Chase Bank. Plaintiffs claim that these five individuals either did not provide investment advice or were involved with the accounts when the balance was $0.00. Furthermore, Lepper approved Defendant's Chase Private Client account by signing as the "Investment Specialist (Series 7)," a license he had registered with JPMS.  Plaintiffs point out that Defendant agreed to allow Chase Bank to manage his assets in this way by express language in the agreement he signed with Chase Bank.

Finally, JPMS acted as a clearing firm on two of thirty-five occasions where a clearing firm was needed to purchase securities.

In 2008, the value of Defendant's investments declined, and Chase Bank terminated the line of credit in the Chase Bank account and liquidated the securities in the Chase Private Client account. Defendant initiated FINRA arbitration proceedings against JPMS on May 21, 2012 alleging that JPMS gave Defendant a line of credit and then impermissibly called the loan and sold the securities to satisfy the unpaid balance. JPMS moved to dismiss those arbitration proceedings arguing that Defendant did not have a signed agreement with JPMS to arbitrate claims before FINRA. JPMS produced no discovery in those proceedings. The arbitration court granted JPMS's motion to dismiss without prejudice. Defendant did not appeal the decision, and the parties tried, unsuccessfully, to settle the dispute through voluntary mediation.

During that mediation, Defendant received discovery from JPMS. Defendant, then, commenced a second FINRA arbitration proceedings in 2014. These proceedings were brought against both JPMS and Lepper, alleging that both JPMS and Lepper recommended an unsuitable investment strategy that caused Defendant to lose his investment.  On March 2, 2015, Plaintiffs filed this suit seeking both to enjoin Defendant from proceeding with the current FINRA arbitration—which is scheduled for a hearing June 28, 2016—and an order confirming the arbitration award from 2012. On January 29, 2016, Plaintiffs filed the instant motion for summary judgment. The court heard oral argument on the motion on May 31, 2016.

Legal Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## Analysis

**A. Permanent Injunction**

The court considers four factors in deciding whether to issue a preliminary injunction: 1) whether the movant will actually succeed on the merits; 2) whether the movant would suffer irreparable injury in the absence of an injunction; 3) whether the injunction is in the public interest; and 4) whether the balance of hardship favors issuing the injunction. *CIG Asset Mgmt., Inc. v. Bircoll*, No. 13-13213, 2014 WL 4059832 at *3 (E.D. Mich. Aug. 15, 2014). Defendant limited his argument to whether Plaintiffs will actually succeed on the merits; so, that is the element the court will focus on.

*1. Collateral Estoppel*

Plaintiffs first argue that they will succeed on the merits because Defendant is collaterally estopped from bringing his claim. Collateral estoppel precludes subsequent litigation of the same issue if: "1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; 2) determination of the issue [was] necessary to the outcome of the prior proceeding; 3) the prior proceeding . . . resulted in a final judgment on the merits; and 4) the party against whom estoppel is sought . . . had a full and fair opportunity to litigate the issue in the prior proceeding." *Bilali v. Gonzales*, 502 F.3d 470, 474 (6th Cir. 2007) (*quoting United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003).

FINRA Rule 12200 reads:

Parties must arbitrate a dispute under the Code if:

> Arbitration under the Code is either:
>
> > (1) Required by a written agreement, or
> >
> > (2) Requested by the customer;
>
> The dispute is between a customer and a member or associated person of a member; and
>
> The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

The FINRA rules do not define "customer" other than to say: "A customer shall not include a broker or a dealer." FINRA Rule 12100.

Plaintiffs argue that the 2012 FINRA arbitration panel decided that Defendant was not a "customer" of JPMS, and Defendant is, therefore, collaterally estopped from rearbitrating this issue. During oral argument on this motion, Plaintiffs conceded that Defendant was a "customer" of Lepper and that Lepper was an "associated person" of JPMS within the definition of FINRA Rule 12200. According to Plaintiffs, however, FINRA Rule 12200 did not apply because Lepper was not acting in his capacity as a JPMS employee when he interacted with Defendant. In other words, the dispute did not arise "in connection with the business activities of the member or the associated person." FINRA Rule 12200.

Collateral estoppel does not apply here. The 2012 arbitration was dismissed "without prejudice." Defendant brought the 2012 arbitration against JPMS alone. In the current arbitration, both JPMS and Lepper are named. The 2012 arbitration panel decided that Defendant was not a "customer" of JPMS because he did not produce any documents or agreements executed between himself and JPMS. (Doc. 16-5, Pg ID 239) ("The parties did not produce any documents or agreements executed by both Parties. The agreements produced were between Claimant and J.P. Morgan Chase Bank NA - which is not a FINRA member.") The panel did not, however, decide the issue of whether Defendant was a "customer" of Lepper, an "associated person" of JPMS.

Defendant presents several facts indicating that JPMS had at least some supervisory role over Defendant's accounts with Chase Bank. Among other things, Lepper signed a supervision agreement with JPMS that gave JPMS supervisory control over "products [Lepper sold or serviced] that are regulated as securities." (Doc. 22-19, Pg ID 672). Several other JPMS employees also worked on Defendant's account. (Doc.

22-22). The 2012 arbitration panel did not decide this issue, and collateral estoppel is, therefore, not appropriate.

In addition, there was no final judgment on the merits from the 2012 arbitration. A final judgment "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1097 n.4 (6th Cir. 2002) (*quoting Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000)). The court cannot find any case within the 6th Circuit that addresses the question whether a dismissal "without prejudice" constitutes a final judgment for collateral estoppel purposes. However, several courts outside of the 6th Circuit have addressed this issue and found that a dismissal "without prejudice" does not constitute a final judgment for collateral estoppel purposes. *See, e.g.*, *Brandenfels v. Heckler*, 716 F.2d 553, 557 (9th Cir. 1983) (holding that "dismissals without prejudice do not constitute a final determination to which collateral estoppel is applied"); *Nat'l Elec. Ben. Fund v. Mirarchi Bros.*, No. DKC 11-2621, 2012 WL 5986456, at *4 (D. Md. Nov. 28, 2012), aff'd, 554 F. App'x 218 (4th Cir. 2014); *Bamgbose v. Delta T Grp., Inc.*, 724 F. Supp. 2d 510, 519 (E.D. Pa. 2010) ("Res judicata and collateral estoppel are not triggered when a court decides something without prejudice; rather, they require final judgments."); *Ahler v. City of New York*, No. 93-0056 (SS), 1993 WL 362404, at *2 (S.D.N.Y. Sept. 13, 1993) ("Dismissal without prejudice averts the possibility of detrimental res judicata and collateral estoppel effects."). This court agrees with those courts and consequently holds that because the 2012 arbitration was dismissed "without prejudice" it was not a final judgment, and the requirements for collateral estoppel are, therefore, not satisfied.

*2. Definition of "Customer"*

Alternatively, Plaintiffs argue that, even if collateral estoppel does not apply, this court should, nevertheless, find that Plaintiffs will succeed on the merits because Defendant is not a "customer" of JPMS for purposes of FINRA 12200. This court has held that whether an investor is a "customer" under FINRA Rule 12200 is a question for the arbitrator to decide. *JHS Capital Holdings v. Deel*, No. 10-11418, 2010 WL 5296928 at *4 (E.D. Mich. Dec. 20, 2010) ("A decision must be made under FINRA Rule 12200 as to whether '[t]he dispute is between a customer and a member or associated person of a member' and whether '[t]he dispute arises in connection with the business activities of the member or the associated person.' Such a determination is a question for the arbitrator, not this Court.") (*citing Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-86 (2002).

As discussed above, the panel did not decide whether Defendant was a "customer" of Lepper, a potential "associated person" of JPMS; it merely decided that, in the 2012 arbitration, Defendant and JPMS did not produce any agreements executed by both parties. (Doc. 16-5, Pg ID 239). Lepper was not a party to that 2012 arbitration. Whether Defendant, as a "customer" of Lepper, may arbitrate his claim before a FINRA arbitration panel is an question for the arbitrator to decide, not this court.

**B. Confirmation of the 2012 Award**

Plaintiffs request that this court confirm the 2012 arbitration award dismissing Defendant's claim against JPMS. In order to confirm an arbitration award, there must first be a final decision from the arbitrator. *See, e.g.*, *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 716 (6th Cir. 2014) (reversing a district court decision because "the panel had not yet issued a final award")*; Lighthouse Galleries, LLC v. Thomas Kinkade Co.,* No. 08-13466, 2008 WL 5102245, at *4-5 (E.D. Mich. Dec. 1, 2008) (explaining that an interim award from an arbitration panel "is not 'final' and, therefore, not subject to confirmation"). As discussed above, a dismissal "without prejudice" is not a final judgment. The 2012 arbitration was dismissed "without prejudice" and is, therefore, not a final judgment. In the absence of a final judgement, confirmation of the 2012 arbitration award is inappropriate at this time.

IT IS ORDERED that Plaintiffs' motion for summary judgment is DENIED.

Dated: June 7, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 7, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk